IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| G&G CLOSED CIRCUIT EVENTS, LLC, | Case No. 12-01036 RS |
| Plaintiff, | **ORDER GRANTING MOTION FOR DEFAULT JUDGMENT** |
| v. | |
| HELOISA CASTRO and CLAUDIO ALMEIDA WAQUED, individually and d/b/a MARCELLO'S PIZZA, | |
| Defendants. | |
| _____/ | |

## I. INTRODUCTION

Plaintiff G&G Closed Circuit Events, LLC, seeks default judgment against defendants Heloisa Castro and Claudio Almeida Waqued, individually and doing business as Marcello's Pizza. G&G is a commercial distributor and licensor for televised sporting events, and claims that on March 5, 2011, Castro and Waqued displayed "Strikeforce: Rafael Calvacante v. Dan Henderson" (hereafter referred to as "the Program") on a television in Marcello's Pizza to approximately 15 to 19 individuals without obtaining the sublicensing rights from G&G to display the program. Because G&G has established the right to have default judgment entered in its favor, its motion will be granted, although statutory damages will be awarded in an amount less than requested.

## II. BACKGROUND

G&G employs investigators to police against unauthorized (and unpaid) exhibitions in commercial establishments of pay-per-view sports and entertainment programming to which G&G holds licensing rights. G&G's investigator, Jeff Kaplan, has submitted an affidavit describing his observations upon visiting Marcello's Pizza, operated by defendants Heloisa Castro and Claudio Almeida Waqued. Kaplan states that he observed a portion of the Program as it was displayed on one television in the restaurant. Kaplan also states that the restaurant has a capacity of over 50 people and that he conducted three separate headcounts, counting between 15 and 19 people in the restaurant during the time he was present. There is no evidence that the restaurant imposed a cover charge for admission, or that the restaurant is a repeat offender in displaying G&G's or any other commercial distributor's program without authorization.

The Program apparently was available both through satellite television services and cable television providers. *See* Complaint ¶¶ 16-30 (alleging violation of 47 U.S.C. § 605, prohibiting unauthorized interception of satellite programming, and violation of 47 U.S.C. § 553, prohibiting unauthorized interception of cable programming). There is no evidence as to which of the two services Castro and Waqued utilized to obtain the Program. G&G asserts that the Program could not have been mistakenly, innocently, or accidentally intercepted and shown, and that Castro and Waqued must have knowingly and willfully displayed the Program.

Had Castro and Waqued obtained a license to exhibit the Program at the restaurant, the fee would have been $1200. G&G's claim for conversion therefore seeks damages in that amount.

## III. STANDARD

Following entry of default, courts are authorized to grant default judgment in their discretion. *See* Fed. R. Civ. P. 55; *Aldabe v. Aldabe,* 616 F.2d 1089, 1092 (9th Cir. 1980). In exercising its discretion, the factors the court may consider include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal

Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). In considering these factors, all factual allegations in the plaintiff's complaint are taken as true, except for those relating to damages. *TeleVideo Sys., Inc. v. Heidenthal,* 826 F.2d 915, 917-18 (9th Cir. 1987).

## IV. DISCUSSION

In this case, the *Eitel* factors weigh in favor of granting G&G's motion for default judgment. The allegations in the complaint, taken as true, and further supported by the evidence submitted with the motion, establish that Castro and Waqued displayed the Program in a commercial establishment without authorization and payment of the requisite fee to G&G. Castro and Waqued were given notice of this action, and knew or should have known that they had an obligation to file a response. Under these circumstances, the policy favoring decisions on the merits must yield to G&G's right to a judicial determination of its claims.

G&G's original complaint asserted claims against Castro and Waqued under 47 U.S.C. § 605, 47 U.S.C. § 553 (alleged in the alternative), and California Business & Professions Code §17200, as well as a conversion claim. G&G's motion only seeks statutory damages under § 605 and actual damages under the conversion claim. Neither the complaint nor the declarations submitted with the motion establish whether Castro and Waqued intercepted a cable signal or a satellite signal, however. Indeed, G&G's motion expressly acknowledges that it has no information as to the method of interception. Thus, while G&G has established that Castro and Waqued wrongfully intercepted and exhibited the Program, and presumably did so in violation of *either* 47 U.S.C. § 605 *or* 47 U.S.C. § 553, there is an insufficient basis to conclude with certainty *which* of the two statutes would support an award of statutory damages. G&G has not indicated why it abandoned the alternatively-pleaded claim under § 553 despite the fact that G&G does not know the method of interception.

In cases similar to this one, holders of pay-per-view licensing rights have sometimes been granted default judgments, including statutory damages, by orders not expressly addressing this issue. When courts have explicitly questioned the adequacy of a plaintiff's showing as to the means

by which a pay-per-view signal was intercepted, they have sometimes been willing to presume it more likely to have been through a violation of § 553, because "a cable box is hidden more easily than a satellite dish." *G & G Closed Circuit Events, LLC v. Vo*, No. 10-05720, 2012 WL 899955, at *2 (N.D. Cal. Mar. 15, 2010); *J & J Sports Prods., Inc. v. Guzman*, No. 08-05469, 2009 WL 1034218, at *2 (N.D. Cal. Apr. 16, 2009). That approach is unsatisfactory here, given that G&G is not seeking damages under § 553.

Nevertheless, § 605 and § 553 each provide a discretionary range of possible damage awards, and those ranges are overlapping between the sums of $1000 and $10,000.[1] G&G points to numerous cases from various districts involving default judgments against defendants for unauthorized exhibition of pay-per-view programming where courts have awarded statutory damages up to the maximum, including, in some instances, "enhanced" damages. G&G urges the same result here. G&G acknowledges that other courts have declined to enter substantial awards, and argues "that those cases that award nominal damages are a major reason why there have been little to no decrease in piracy."

G&G, however, has not shown that there is any threshold amount that creates a deterrent effect, or that default judgments ever significantly deter "piracy." The inference G&G seeks to draw—that nominal damages awards in default judgments perpetuate continued misappropriation—is undermined by its citation to many cases awarding statutory maximums, which apparently likewise have proven ineffective at deterring the conduct.

Nevertheless, were G&G awarded under its conversion claim only the $1200 license fee Castro and Waqued avoided paying, it is self-evident that defendants would have no disincentive against simply continuing to exhibit pay-per-view programs without authorization and allowing default judgments to be entered when a plaintiff learns of it and pursues the matter. Accordingly,

---

[1] The range under § 605 is from $1000 to $10,000, with the potential of enhanced damages up to $100,000 for a willful violation committed for commercial advantage, or a reduction to as low as $250 where, "the violator was not aware and had no reason to believe that his acts constituted a violation." Under § 553, the basic range is from $250 to $10,000, with potential enhancement up to $50,000, or reduction down to $100.

4

Case No. 12-01036 RS
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

under all the circumstances here, an award of statutory damages in the amount of $5000 is appropriate. Any uncertainty as to whether Castro and Waqued in fact violated § 605 is immaterial in light of the fact that a statutory award in the same amount is equally appropriate in the event they actually violated § 553. Castro and Waqued's failure to appear and defend this action cannot be permitted to preclude G&G from being awarded any statutory damages, when it has shown that the interception of the Program necessarily violated one of the two statutes.

G&G has not shown, however, that an award of "enhanced" damages under either statute is warranted. Nor has it shown that it is entitled to recover actual damages under its conversion theory *in addition* to statutory damages. *See* § 605(e)(3)(c) ("at the election of the aggrieved party . . . [it] may recover the actual damages . . . *or* . . . statutory damages . . ."). Judgment will therefore be entered in the amount of $5000.

## V. CONCLUSION

The motion is granted. A separate judgment in plaintiff's favor will issue.

IT IS SO ORDERED.

Dated:  8/9/12

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE